CUNNINGHAM *vs.* THE HUDSON RIVER BANK.

Proof of the *hand-writing* of a party to negotiable paper—what will be deemed sufficient.

The mere fact that *checks* upon one bank had been passed to the credit of another, which had discounted and transmitted them to a correspondent for collection, is not enough to support the testimony of a witness who swears to the hand-writing of the drawer of a check, of which he has no knowledge other than that derived from its similarity to the signatures of the checks paid.

It *seems*, that it is not enough to receive proof of *hand-writing*, that the witness has received letters from the party sought to be charged, *upon which he has acted,* unless such acts were subsequently recognized or ratified by the writer of the letters.

ERROR from the superior court of the city of New York. The action below was brought by *the bank* against *Cunningham* to recover the amount of a check for $146, which it was alleged had been drawn by him on the *Greenwich Bank,* N. Y., and negotiated to the plaintiffs, and which had been lost. 2 R. S. 406, § 75, 76. *Coffin,* the plaintiffs' cashier, testified that on or about the 20th June, 1835, the plaintiffs paid a check purporting to be drawn by *S. A. Cunningham,* for $146, on the *Greenwich Bank,* in New York; that he enclosed the check in a letter to *G. A. Worth,* cashier of the *City Bank* in New York; and gave the package to Capt. Seymour of the steamboat De Witt Clinton—there being no mail on that day. He further testified that he did not know the defendant, and never saw him write. The check was payable to bearer; did not

know from whom the check was received; did not pay it himself, but received it from Mr. *Annable,* the paying teller. He further testified, that from April to June, the plaintiffs paid some eight or ten checks of a like kind, which had been sent to the *City Bank* and paid. This one was in the same hand-writing with the others, and was the last check with that signature which the plaintiffs received. The checks were sent to the *City Bank* for collection, and were by that bank carried to the plaintiffs' credit.

The fact that the check in question never reached the *City Bank,* and that the package containing it was lost, was sufficiently proved. *G. A. Worth,* cashier of the *City Bank,* testified that he had no recollection of ever having received any checks drawn by *S. A. Cunningham;* did not remember any such ever passing through the bank; they should have passed through his hands in every instance.

On this evidence the defendant moved for a nonsuit, because the evidence of his hand-writing was insufficient to go to the jury and because there was no evidence that he ever gave any check on the Greenwich Bank, or had ever kept an account there. The motion for a nonsuit was overruled, and the defendant excepted. The judge charged the jury, that if they were satisfied upon the evidence that the check in question had been drawn by the defendant, had been taken and paid by the plaintiffs, and had been lost, the plaintiffs were entitled to recover. The defendant excepted to the charge, and the verdict and judgment having passed against him, he now brings error.

*J. R. Whiting,* for plaintiff in error.

*D. D. Field,* for the defendants in error.

*By the court,* BRONSON, J. A witness must, in some way, have acquired a knowledge of the general character of the party's hand-writing, before he can be qualified to testify on that subject. If he has not seen the party write, he must have seen genuine specimens of his hand-writing; and the fact that they were genuine, must be proved. It is not

enough that they purport to come from the person whose hand-writing is in question. The cases of *Titford* v. *Knott*, 2 Johns. Cas. 211, *Johnson* v. *Daverne*, 19 Johns. R. 134, and *Harrington* v. *Fry*, Ryan & M. 90, to which the counsel for the plaintiffs below referred, only show that the authenticity of the specimens may be established by presumptive, as well as by direct evidence; not that the fact of authenticity can be presumed without proof. When letters are directed to a particular person on business, and answers are received in due course, a fair inference arises that the answers were written by the person from whom they purport to come; and if a man has deliberately admitted his liability upon instruments purporting to bind him, as by paying notes or bills on which his name appears, it is but reasonable to presume that the signatures to those instruments were in his hand-writing. Other cases might be mentioned where the circumstances will well warrant the inference of authenticity, although there may be no direct evidence to that effect. But in some way, the fact that the specimens are genuine, must be satisfactorily proved.

The only case I have met with which seems to conflict with this position is, that of *Tharpe* v. *Gisburne*, 2 Car. & Payne, 21. The case, as it is briefly and, I think, imperfectly stated by the reporters, was this: "The defendant's attorney was called to prove his signature to a paper; he said he had never seen the defendant write, but that he believed this instrument to be his hand-writing from having received letters from him, *upon which he had acted;*" and *Best*, Ch. J. held this sufficient. It must, I think, have appeared that the defendant had in some way acknowledged that the letters which the witness had received were written by him. They probably related to the defence of the suit, or to some other matter upon which the witness had acted in his character of attorney; and if the defendant had not, in terms, admitted the authenticity of the letters, there may have been such a ratification of what had been done in pursuance of them, as to leave no room for doubt that he was the author. The fact stated by the reporters, that the witness had *acted upon the letters*, unless it was followed

up by other evidence, was wholly unimportant. It only proved that the witness believed the letters genuine; not that they were so in fact.

In a note to the case of *Tharpe* v. *Gisburne*, it is said, that, " now, the universal practice of the lord chief justices at the sittings is, if a witness states that he has received letters, purporting to come from a party, *and has acted on those letters*, to ask him whether he believes the paper he is called to prove is of that party's hand-writing." If any such practice has been adopted at *nisi prius*, in England, it is of recent origin; and I am not prepared to follow it. Standing alone the fact that the witness *has acted on the letters*, has no tendency to prove them genuine. It only proves, and that merely by inference, that the witness believed the letters authentic. His *belief* is of no importance, unless it is founded upon some good reason; such a reason as will satisfy the court and jury as well as the witness.

Although the fact that the witness has acted on the letters, when standing alone, is of no importance, it may be of great value in a chain of circumstantial evidence. The acts done in pursuance of the letters may be followed by such acts of approval or acknowledgment on the part of the supposed author as can only be accounted for on the supposition that he was in truth the writer of the letters; and there can be no doubt that in this way, as well as by a direct admission, the fact of authenticity may be satisfactorily established.

In the case at bar, I am unable to discover any satisfactory evidence that the checks from which alone the witness derived his knowledge of the hand-writing, were drawn by the defendant. The witness undoubtedly thought them genuine, for otherwise he would not have taken them. But that fact alone, will not answer. The only further evidence upon this point was, that the checks had been sent to the *City Bank* for collection; and were by that bank carried to the credit of the plaintiffs. This fact adds little or no force to what had been proved before. It only shows that the teller or other officer of the city bank gave credit to the checks. And that he, as well as the plaintiff's cashier,

Cunningham v. Hudson River Bank.

thought them genuine. But the belief of two, or even ten witnesses upon such a question is no better than the belief of one. The checks were drawn on the *Greenwich*, not on the *City* bank, and there was no proof that they had ever been paid, or presented for payment; nor that the defendant had ever kept an account with, or drawn a check on the Greenwich bank.

But it is said in the ordinary course of business the City bank would present the checks at the Greenwich bank for payment. If we presume the presentment, we must still make two further inferences before we reach the necessary conclusion that the defendant had admitted his liability on the checks. We must presume payment by the Greenwich bank, and then, that the defendant had ratified the payment. This would be building presumption on presumption, and that too without any very good reason for believing that we were approximating the truth. For, unless we assume at the outset that the checks were genuine, which is the very matter in dispute, the fact of presentment affords no ground whatever for presuming that they were paid. And again, if presentment to, and payment by the bank had both been proved, it would not follow that the defendant had ratified the payment, or in any way admitted that it was made on his account.

It is worthy of remark, that although the cause was tried in the city of New York, no officer of the Greenwich bank was called as a witness. The plaintiffs resort to a string of presumptions to make out their case, when they might in a few minutes, and without any inconvenience to any one, have laid before the jury all the facts in relation to the supposed payment of the checks.

The proof on which the plaintiffs rested their case is open to a further remark. The checks from which the witness derived his knowledge of the hand writing, as well as that on which the action was brought, may either have been *forged* with intent to defraud the defendant, or they may have been *genuine* checks drawn by some other person of the name of Cunningham. The witness had never seen the defendant write, and did not know him. The checks were

signed " S. A. Cunningham," and there was no proof either that the defendant had ever subscribed his name in that manner, or that there was not some other person in the city of New York who did so sign his name. The initial letter " S." may as well stand for *Solomon* as for *Samuel ;* but should we assume that in these checks the letter stands for *Samuel,* there may be other men in the city of the same name with the defendant. In *Harrington* v. *Fry,* Ryan & Mo. 90, the witness who proved the hand-writing, said he had never seen the defendant, but had corresponded with *a Samuel Fry of Plymouth Dock;* that he had so addressed his letters, and had received answers from him; and it was from these letters that he derived his knowledge of the hand-writing. And it was thought necessary to call another witness to prove that *the defendant, Samuel Fry,* lived at Plymouth Dock, and that there was *no other person of that name living at Plymouth Dock* within the knowledge of the witness. It was still objected that there might be another person of the same name at Plymouth Dock, but Best, Ch. J. said, it was evidence for the jury to consider whether the letters mentioned by the witness were not written by the defendant.

I think the evidence was not sufficient to carry the cause to the jury. The plaintiffs should have been nonsuited.

Judgment reversed.