## Noah Hammond, Respondent, v. Allen C. Varian, impleaded, etc., Appellant.

One who has seen a party, whose signature is in question, write his name once, or who has held his note, acknowledged and conceded to be genuine, is a competent witness as to the genuineness of such signature.

In an action against a father and son upon a promissory note, purporting to be executed by them as joint makers, which was given in the business of the latter and was unquestioned by him, but which was disputed by the former, he claiming that his signature thereto was a forgery, evidence tending to prove that he had recognized the validity of and his liability upon other similar notes which he himself has not signed, after full knowledge that the signature was not his handwriting, was received in conjunction with evidence that the signature was, in fact, made by the son, *held*, proper, as tending to show authority in the latter so to sign.

Evidence, however, that the father assisted his son in starting business by loaning him money and procuring money for him upon his (the father's) indorsement, and took security by chattel mortgage for such loans and indorsements, *held*, not competent, as such accommodations in no way tended to show a grant of authority to sign notes in the name of the father.

(Submitted June 12, 1873; decided September term, 1873.)

Statement of case.

APPEAL by Allen C. Varian, one of the defendants, from judgment of the General Term of the Supreme Court in the sixth judicial district, in favor of the plaintiff, entered upon an order denying a motion for a new trial, and directing judgment on a verdict.

This action was brought on a promissory note, dated March 10, 1863, for $125, purporting to have been made by the defendants jointly, payable nine months after date to Charles Ross or bearer.

The defendant Allen C. Varian alone answered the complaint, and denied that he ever signed the note, and he alleged that the signature of his name thereto was made without his authority and consent, and is a forgery, and that he never ratified or affirmed the same. He is the father of Charles S. Varian, the other defendant.

There were several exceptions taken to the admission of evidence during the progress of the trial, which present the question raised upon the appeal; these are sufficiently referred to in the opinion. Exceptions were ordered to be heard at first instance at General Term.

*J. A. Christie* for the appellant. The note was admitted in evidence without proof, and no subsequent doubtful evidence could cure the error. (*Utica Ins. Co.* v. *Badger*, 3 Wend., 103; *Cunningham* v. *H. R. Bk.*, 21 id., 556; *Van Wyck* v. *McIntosh*, 14 N. Y., 439; *People* v. *Spooner*, 1 Den., 343.) Where an appellate court sees that improper or incompetent evidence admitted on the trial might have swerved the minds of the jury, it is a cause for reversal. (*Myres* v. *Malcom*, 6 Hill, 292; *Williams* v. *Fitch*, 18 N. Y., 546.) The admission in evidence of the chattel mortgages was error. (*Gillett* v. *Mead*, 7 Wend., 193; *Clark* v. *Vorce*, 19 id., 232; *Dressor* v. *Ainsworth*, 9 Barb., 619; 6 Hill, 292; 14 N. Y., 546; 1 id., 519; 19 id., 299; 18 id., 546; 14 id., 439.)

*Smith, Robertson & Fassett* for the respondent. It was proper to receive in evidence the notice of protest produced

by defendant's counsel. (10 Wend., 404.) If defendant was in the habit of recognizing notes signed by his son in his name, it was sufficient to raise a presumption that he had authorized his son to use his name, and he was bound by it. (4 Wend., 221; 10 id., 404; 2 Pars. on Notes, 594; 1 Pars. on Con., 44, note *s;* 1 Hill, 501; 17 Barb., 171; 26 id., 264.)

LOTT, Ch. C. The note in question was properly admitted in evidence.

Proof was given by the plaintiff of an admission by the defendant, Allen C. Varian, tending to show, and sufficient, if uncontradicted, to prove that he had made it, and other evidence was given of facts and circumstances in relation to its delivery to Ross, the payee, from which it might, in connection with the evidence of such admission, be inferred that it was signed by him. There can, therefore, be no question of the sufficiency of the proof to warrant the note to be read to the jury at the time it was offered and introduced.

After its introduction, one witness who had seen the defendant write his name once, and another who had never seen him write, but who had held his note, acknowledged and conceded to be genuine, were permitted to express their opinion and belief, against the defendant's exception, whether the signature was his. The objection taken to the testimony was, that they had not shown themselves sufficiently acquainted with the defendant's handwriting to testify as to its genuineness. This was not tenable. They had some means, although slight, of enabling them to judge whether the signature was that of the defendant, yet sufficient, in their belief, to express an opinion in reference thereto. The extent of their knowledge, and the weight or effect to be given to their opinion, were proper matters for the consideration of the jury. (See Greenleaf on Evidence, vol. 1, § 577.)

Evidence was also given, against the defendant's exception, tending to prove that he had recognized the validity and his liability for the payment of other notes to which his name, in conjunction with that of his co-defendant (who was his son),

purported to be signed, but which he himself had not signed, after full knowledge that the signature was not in his proper handwriting. This within the principle of the decisions in *Weed* v. *Carpenter* (4 Wendell, 219); *Same* v. *Same* (10 id., 404), was admissible, in connection with the fact that his name was so signed by his co-defendant, or assumed so to have been, on the trial, for the purpose of showing that he had authorized it to be done, from which the jury might infer or presume an implied authority to sign his name to the note in question, if, as the judge at the circuit instructed the jury, he "was in the *habit* of recognizing these notes which his son thus signed in his name as authorized and genuine notes." (See also *Cunningham* v. *Hudson River Bank*, 21 Wendell, 559.)

The plaintiff was also permitted to show, against the defendant's exception, that his son and co-defendant, when he commenced business, had very little or no capital; that the defendant assisted him with money borrowed for him from different persons, and that two chattel mortgages were given to him; one for $600, dated 14th of January, 1863, by Seaman & Varian, a firm of which the son was a member, to secure an indebtedness of that amount from them to him, and the other for $3,200, dated 11th February, 1864, executed by the son alone, to secure his father for moneys paid to the son and against indorsements made for him, and against his liability on an undertaking given by him and his son to Pamilla Seaman (who, I understand, was one of the firm of Seaman & Varian), to pay the debts of that firm assumed to be paid by Varian, the other member thereof, on its dissolution. None of this evidence was admissible. The note in question was given for a horse bought by the son of one Ross, having, so far as appears by the case, no connection with the business of the son as a member of the firm of Seaman & Varian, or transacted on his own account; and if it had, I see no tendency in the testimony to prove that the defendent authorized his son to sign his (the father's) name to notes given by him (the son) to other parties. The advancement and raising of

moneys to and for the benefit of a party are matters entirely distinct and different from a grant of authority to such party to sign notes in the name of the person by whom such accommodation and favors are given. There is no claim or pretence that either of the mortgages referred to was given to secure the payment of notes signed by the son, and to which he also subscribed the name of his father, or had any relation whatever thereto. The first was given nearly two months before, and the last nearly a year after, the date and delivery of the note in question, and each of these was given for a specific purpose, entirely disconnected with the note or its consideration. They were, therefore, irrelevant to the issue which the jury were trying, and their introduction was damaging and prejudicial, in its tendency, to the defendant. The evidence that had been given for the purpose of proving the recognition by him of the validity of other notes to which his name had been signed by the son in connection with his own, and his admission of his liability to pay them, was very slight and of a doubtful and questionable character, in view of the circumstances under which it was given and the peculiar relation or situation in which the parties testifying, or most of them, stood to the defendant. They were claimants on notes signed in the same manner and were, therefore, interested in the question, although not to be affected by the result or event of the issue in this particular case. The testimony, in connection with other matters not material to be specially noticed but also admitted against the defendant's exception, was well calculated to produce an impression on the minds of the jury prejudicial to his claim and to give improper and unfavorable weight and effect to the slightest circumstances of apparently undue favor and preference given by the son to the father in securing him against loss to the prejudice of the other creditors of the son, and especially as the admission of such evidence by the court, against the persistent objection of his counsel, justified and warranted them in assuming that it was material, and consequently, in acting upon that assumption, it was likely to affect their opinions and

conclusion on the question of the defendant's liability. It clearly had a tendency to divert their attention from the real issue, by extraneous matter, which may materially have influenced their verdict.

It follows that the judgment, by reason and in consequence of the erroneous admission of the evidence last considered, must be reversed, and a new trial must be ordered, costs to abide the event.

All concur.

Judgment reversed.