Smith, P. J.
Action upon a judgment against the defendant recovered in this court by George Smith, the plaintiff’s intestate, on the 19th of June, 1860. The defendant pleaded the statute of limitations, and the plaintiff relied upon certain letters, alleged to have been written by the defendant, as containing a promise or acknowledgment sufficient to take the case out of the statute
A question is raised as to the sufficiency of the evidence relied upon by the plaintiff to show that the letters and the signatures thereto were in the handwriting of the defendant. William H. Seibold, called as a witness for the plaintiff, testified that he was a brother of the defendant, and had seen more or less of his handwriting. Two papers were then shown to the witness, purporting to be letters signed by the defendant, and addressed to the plaintiff’s intestate, one dated “ Newark, N. Y., May 8th, 1877, the other, “ Buffalo, August 10, 1883.” The witness tes- *260 tifie d, in substance,'that be thought he knew his brother’s signature ; should judge the signatures were his; had not seen his signature made in a few years; was familiar with- it four or five years ago ; wouldn’t swear positively whether the one produced was his original signature or a copy; it looked like his; that is all he could swear ; -it might be some one else’s for all he knew. The defendant’s cqunsel objected to the proof of the hand writ-, ihg,' on the ground that the witness had not. shown himself competent to speak on the. question. . The objection was overruled, the defendant’s counsel: excepted, and the letters were read in evidence. ' :
The exception brings up the question whether the witness was shown to have the proper knowledge of the defendant’s handwriting to be permitted to express his opinion or belief in regard to the genuineness of the writing in question. That a witness must, in some way, have acquired a knowledge of .the ; general character of the party’s handwriting, before he can he qualified to-testify on-that-subject/is undisputed. If he has seen the party write, even but once, and then only his name, the .proof, though it may be very light, is admissible. (Gr. Ev., § 577.) If he has not seen the party write, he must have seen genuine specimens of his handwriting; and the 'fact that they were genuine, must be proved. It is not enough that they puN port to come 'from the person whose handwriting is in question. (Cunningham v. Hudson River Bank, 21 Wend., 557.) The authenticity of the specimens may be established by presumptive', as well as direct' evidence, as; when letters are directed to a particular person on business, and answers are received in due coinke, a’fair inference arises that the ans wers" were' written, -by the person from whom they purport .to come. . ■ : - t
In-, the' present 'cáse,', the ‘witness did not testify, .in:express terms, that he had ever seen the defendant write. He stated, hbwévér,- that hé was familiar' with the - defendant’s' signature, four or five years before-the trial, and .that: statement, was suffi-o Gient to render him competent to testify, provided the signature with .which he was formerly familiar was . genuine.. Upon that* point there is no evidence whatever, except the. general state-ment of the witness, that .he was familiar .with the. defendant’s', signature at that time. It may be that the evidence .was suffi-5 dent to warrant-the",inference that thé signature referred to by the witness as'having been familiar to him was'known by him: to be the genuine signature of the defendant; .and, as the ques-.. tion.of the competency .of the witness was for the court and not ■ for the- jury to decide, the . ruling may .be upheld on that ground. It was competent for the defendants counsel.to cross-. ex'ainine the witness as to the grounds of his statement that'the: signature with which he was formerly familiar, .was that .of the -defendant, and his omission to do so/perhaps strengthened the *261 inference above suggested. On tbe whole, we think the ’trial court properly allowed the evidence of handwriting- to go to’ the jury to be weighed by them. ’ '
The effect of the letters is to be considered. The evidence fairly establishes that they were addressed to the plaintiff’s intestate, and that they refer to the claim in suit, but they contain no express promise to pay the debt. The nearest approach to such a promise is to be found in the following words contained in the first letter, to wit: “ It is one of my daily burthens that I owe you and have contributed to your life’s difficulties, and, no matter when or how long it may be, whenever it shall be possible, I shall certainly relieve myself of such a debt.” At most, that was but evidence from- which a conditional promise to pay when the defendant was able, might be inferred. In regard to the defendant’s subsequent ability to pay, it appeared that some two years after the date of the letter, the mother of the. defendant died, leaving a will by which a part of her estate was to be divided among her five children equally;. that the amount divided was “something like 5,000 or 6,000 dollars; ” and-that .the executor paid defendant’s share tp his wife' on being notified that it belonged to her. Whether the transfer of the bequest to the wife was a gift from her husband, or in payment of a debt, legal or equitable, which he was owing her, does not appear. !
That the letters acknowledge an indebtedness from the writer to the person to whom they are addressed, is apparent from' the reading of them. But an acknowledgment is not enough to renew or continue the debt, unless it is evidence from which a promise to pay may be inferred. And to‘raise, that inference, the acknowledgment must be unconditional, and one which implies a willingness to pay. (Bloodgood v. Bruen, 4 Seld., 362.) The first letter precedes the words already quoted, with a very earnest declaration of the writer’s destitution and his inability tp pay. In the second, the writer speaks of his “ hard struggle to live ” and support his family, and of his hope to be sometime “free from all obligations,” including that of the intestate,-but he expressly declines to make any promise or engagement till he sees “ a fair possibility ” of meeting his debts. It is apparent from the letters that they were written in reply to letters from the intestate, but the latter were not put in evidence. The rules above stated in respect to an acknowledgment are applicable to an acknowledgment in writing, under the statute. . (Code C. P., § 395.) It was, therefore, a question upon all the evidence, including that contained in the letters, whether a promise to pay could be implied, and if such promise was conditional, whether the condition had happened. Those were questions for the jury. ■ ■ • • ' - - - -.
This leads us to what we conceive to be a vital error in' the *262 case. At tbe close of the plaintiff’s evidence, the defendant not offering any proof, the court, at the request of the plaintiff’s counsel, and against the exception of the defendant’s counsel, directed a verdict for the plaintiff. In that, we think the court erred. It was for the jury to say, under proper instructions, first, whether the slight evidence as to handwriting satisfied them that the letters were written by the defendant, and next, whether the proof established a promise to pay, which revived or continued the debt. The defendant did not waive his right to have those questions left to the jury.
We think the judgment should be reversed and a new trial ordered, costs to abide the event.
Barker, Haight and Bradley, JJ., concur.
So ordered.