McCONNELL v. PLAYA DE ORO MIN. CO. et al.

(Supreme Court, Appellate Division, First Department. July 18, 1899.)

1. EVIDENCE—SIGNATURE—SUFFICIENCY OF EVIDENCE.
    In the face of a denial of the execution of a power of attorney, evidence of one who claimed to have once seen defendant sign the verification of a pleading with a gloved hand, defendant claiming that she signed it without a glove, and witness showing no special knowledge in reference to matters of handwriting, is insufficient to prove the signature.

2. HUSBAND AND WIFE—APPARENT AUTHORITY TO ACT FOR WIFE.
   Evidence that stock sold by a husband to his wife for a valuable consideration was not delivered, and was afterwards transferred by the husband, is insufficient to show that the husband was clothed with apparent authority to traffic with the stock, where it was in escrow at the time, and had not been issued.

3. SAME—FINDING—JUDGMENT—PLEADINGS AND EVIDENCE.
   A finding that a sale of a wife's stock was made by a husband clothed with apparent authority to make the sale, without more, will not support a judgment requiring a transfer of the shares, in which plaintiff alleges that the sale was made under a written power of attorney executed by the wife, and at no time claimed that he purchased on any such apparent authority.

Appeal from special term, New York county.

Action by Hugh McConnell against the Playa de Oro Mining Company and Hattie E. Ketchum. Judgment for plaintiff, and defendant Ketchum appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

R. B. Duyckinck, for appellant.
C. G. Bennett, for respondent.

VAN BRUNT, P. J. This action was brought to compel the defendant company to transfer certain stock standing in the name of the defendant Hattie E. Ketchum upon the books of the defendant company, represented by a certificate in the name of said Hattie E. Ketchum, which certificate was held by the plaintiff, who claimed to be a purchaser thereof for value, and upon the back of which certificate was indorsed a power of attorney to transfer, alleged to have been signed by the defendant Ketchum. The complaint alleged the ownership by the defendant Ketchum of the stock, that the plaintiff bought said stock from her, and that she then duly transferred and assigned to him her said stock, and duly transferred, assigned, and by her duly-authorized agent delivered to him the said certificate therefor. The answer of the defendant Ketchum admitted the ownership, and denied the sale and transfer. Upon the trial evidence was given tending to show that the defendant Ketchum's husband had been the owner of 800 shares of stock in the defendant company; that he had sold and transferred his interest in said shares, for a valuable consideration, to his wife, the defendant Ketchum, and that some time subsequently he had had 200 of said shares transferred into the name of his wife (four certificates, of 50 shares each, being issued in the name of the defendant Hattie E. Ketchum); and that Frank S. Ketchum assumed to sell 50 of these shares to the plaintiff, and delivered one of the 50-share certificates to him, the power of attorney upon the back purporting to be signed by the defendant Ketchum. What was claimed to be evidence was offered to prove the signature of the defendant Ketchum to the power of attorney, which signature was denied by her, and evidence was also offered as to the circumstances under which she had obtained the stock from her husband. Upon this evidence the court held, not that she had signed the power

of attorney, but that by the original ownership by said Frank S. Ketchum of the stock, and his retention of the certificate, and his causing the speedy transfer of the stock to a purchaser in good faith for a valuable consideration, and by the relations existing between the defendant and her husband, and her suffering him apparently to deal with the said stock, the said Frank S. Ketchum had apparent authority to sell and dispose of the same, and that the said plaintiff became the lawful owner of the stock represented by the said certificate, and that the plaintiff was entitled to judgment.

It seems to us that the learned court, in making this disposition of the case, entirely lost sight of the issues presented by the pleadings. The allegation in the complaint was that the defendant Ketchum was the owner of the stock; that she had sold and duly transferred to the plaintiff said stock, and by her duly-authorized agent delivered to him said certificate therefor. The plaintiff attempted to prove that the defendant Ketchum had signed the power of attorney, in support of this issue. It seems to us that the evidence was totally insufficient, in the face of her denial, to show that this power of attorney was signed by her. The only evidence on this subject was the testimony of a lawyer named Gayley, who had seen the defendant sign the verification of a pleading, as he says, with a gloved hand. The defendant Ketchum says she signed it without her glove. This was the only evidence offered to prove the handwriting. Now, while it has been held that it was not error to admit evidence of this character, yet it is clearly intimated that its probative force is of but little value, standing alone. Hammond v. Varian, 54 N. Y. 398. It is true that such a rule of evidence is stated to exist by Greenleaf on Evidence (volume 1, § 577), but it is to be noticed that, of the authorities cited by him, one holds that such means of knowledge is not sufficient, another holding that it is; the question of the weight of the evidence being for the jury. In the case at bar there was no evidence whatever to support the testimony of this witness. He had no special knowledge in reference to matters of handwriting, and, according to his own testimony, had never seen the defendant write under conditions which would enable him to form a judgment as to what was her proper signature; and the signature being denied by the defendant, and reasons being given why it did not look like hers, it seems to us that it would have been error, even if the court had found that the signature was hers, and that the power of attorney had been executed by her. But the court has not so found, and has based its judgment upon another set of circumstances, which do not seem to have any foundation in the proof. There is no evidence whatever that the defendant's husband was allowed to deal with this stock, to her knowledge. When she bought the stock from him, he informed her that it was held in escrow, and had not been issued. She never knew that the stock had been issued until the certificates in question for the 200 shares were issued in her name. Some time after that she received some notice from the company, addressed to her as a stockholder. There is no evidence that she ever authorized her husband to traffic in this stock, or that she had ever

given him any authority over it whatever, after he had conveyed his interest therein to her. He having represented that the stock was not issued, it was entirely natural that she would not be looking for the certificates. It is a somewhat peculiar circumstance that the plaintiff should have held this stock for two years after its alleged purchase without any attempt whatever to have it transferred upon the books of the company.

The facts in the case are entirely and essentially different from those which existed in the case of McNeil v. Bank, 46 N. Y. 325. There the plaintiff, the owner of certain shares of stock of the Tenth National Bank of Johnsville, delivered the certificate, with a power of attorney duly executed by him, to his broker, to secure a balance of account; and the broker, without authority, and without the acquiescence of the owner, pledged the stock with other securities. It was held that the pledgee or his assignee was entitled to hold the stock as security for the loan. The defendant in this action never signed the power of transfer,—never clothed her husband with any apparent authority to deal with this stock,—and the plaintiff nowhere testifies or claims that he bought the stock from the husband upon any such apparent authority; his claim, on the contrary, being that the defendant Ketchum executed the transfer, and that is what he attempted to prove upon the trial. We think, under the issues in this case, there was no evidence whatever which justified the finding that the plaintiff was entitled to the transfer of this stock.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.