# COURT OF APPEALS,
## July 13, 1915.

# THE PEOPLE v. DUNBAR CONTRACTING COMPANY ET AL.

### (215 N. Y. 416.)

(1.) CONSPIRACY *—FACTS IN CRIMINAL ACTION FOR, REVIEWED AND HELD SUFFICIENT TO SUSTAIN VERDICT.

The facts reviewed in a criminal action against a contracting corporation, its president-treasurer, and a foreman of laborers in the service of the state, for unlawfully conspiring to defraud the state in the repair of a state road, and *held*, that the evidence sustains the verdict of the jury convicting the defendants of the crime charged.

(2.) SAME—ALLEGED ERRORS IN ADMISSION OF EVIDENCE AND IN INSTRUCTIONS TO JURY HELD TO NOT BE ERRONEOUS.

Upon the trial of the defendants the trial court admitted in evidence a talk had over the telephone, before the work was started, between the state superintendent of repairs in that district and some person, in which talk said superintendent was requested to assign the defendant foreman as foreman of the job, the superintendent having testified that in his opinion the voice at the telephone was that of the defendent president-treasurer of the defendant corporation whom he afterwards met and whose voice he recognized, and the court also admitted in evidence a typewritten letter of the same date as the telephone conversation and referring to it, written on the letter-head of the defendant corporation and to which the name of the defendant president-treasurer was signed, though it was not his signature. *Held*, that the admission of such evidence does not constitute error.

(3.) SAME—CHARGE TO JURY.

The trial judge construed the written contract between the state and the defendant corporation and instructed the jury that they must accept his construction and then charged that if the road was built in substantial compliance with the contract, or if there was an honest misunderstanding of the plans and specifications as a result of which the work was not properly done, the defendants cannot be convicted. The defendants contend that a departure from the contract, due to an

---

* See Notes, Vol. 6, 271; 9, 316.

honest mistake should have been considered by the jury in passing upon the criminal intent of the defendants. *Held,* that the charge was sufficient, that no fuller instructions were asked for and that none were necessary.

(4.) SAME.

The trial judge stated in substance to the jury that the original plan and specifications, signed in the name of the defendant corporation by its president-treasurer, and accepted by the state, constituted the contract, and that the contractor was presumed, in the absence of any claim or evidence to the contrary, to have known what it signed. *Held,* that the jury was not left in doubt as to the consequences of honest error on the part of the defendants, and if an inference of mistake was possible the jury was told that it was at liberty to draw it.

(5.) SAME.

Defendants' counsel asked the court to charge " that the mere fact that a conspiracy has for its object the doing of an act which may be unlawful; the doing of such an act does not constitute the crime of conspiracy unless the jury find that the parties were actuated by a criminal intent." To which the court responded: " I charge that, gentlemen. The criminal intent in this case means an intent to get money unlawfully from the state for the corporation, the contractor." *Held,* that the charge as a whole was free from error.

(6.) SAME—TRIAL—JURY SEPARATING IN GOING TO DINNER.

Defendants complain because during the trial the court permitted the jurors to be separated, six jurors being taken to dine at one hotel and six at another, each squad being in charge of an officer. *Held,* that the division of the jurors did not infringe the defendant's rights; that the courts below have full discretion to deal with such a question justly; and that the exercise of their discretion is not reviewable in this court.

People v. Dunbar Contracting Co., 165 App. Div. 59, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 18, 1914, which affirmed a judgment rendered at a Trial Term for the county of Rockland upon a verdict convicting the defendants of the crime of conspiracy.

The facts, so far as material, are stated in the opinion.

*Louis Marshall* and *Mortimer B. Patterson* for appellants.

The court erred in admitting in evidence as against the appellants the testimony of the witness Thomas Lynch concerning a telephone conversation alleged to have taken place between Lynch and the appellant Dunn relative to placing Fogarty in charge of the work of state road No. 91, and in admitting in evidence a letter purporting to have been written by the appellant Dunn to Lynch. (Murphy v. Jack, 142 N. Y. 215; People v. McKane, 143 N. Y. 474; Pumphrey v. Giggey, 150 Ill. App. 473; Gallagher v. Singer Sewing Machine Co., 177 Ill. App. 198; Harris v. Raskin, 142 N. Y. Supp. 342; Mankes v. Fishman, 163 App. Div. 789; Polstein v. Morse, 147 N. Y. Supp. 62; Abrahams Co. v. Komarow, 137 N. Y. Supp. 862; Wells Co. v. Silverman, 125 N. Y. Supp. 457; Code Crim. Pro. § 393; People v. Fitzgerald, 156 N. Y. 253; People v. Strollo, 191 N. Y. 42.) It was error for the court to require the jury to accept the construction given by the court to the contract between the state and the Dunbar Contracting Company, although the evidence indicated that in many respects its provisions were vague and ambiguous, and the contract as furnished to the appellants omitted a material insert entitled " work to be done." (First Nat. Bank v. Dana, 79 N. Y. 108; Brady v. Cassidy, 104 N. Y. 155; White v. Hoyt, 73 N. Y. 505; Kenyon v. R. S. & M. A. Assn., 122 N. Y. 247; Stokes v. Mackay, 140 N. Y. 640; Rankin v. Fidelity, etc., Ins. Co., 189 U. S. 242; J. & L. Stell Co. v. M. & W. Dredging Co., 150 Fed. Rep. 298; 1 Thompson on Trial [2d ed.], § 1083.) The court erroneously charged the jury as to what constituted criminal intent. (People v. Powell, 63 N. Y. 88; People v. Flack, 125 N. Y. 324; People v. Wiman, 148 N. Y. 29.) It was error for the court to refuse to declare a mistrial, for it appeared that without the knowledge or consent of the appellants, or of their counsel, and without any order made by the court, the jury,

after it had been charged and was engaged in deliberating upon its verdict, was permitted to separate. (Eastwood v. People, 3 Park Cr. Rep. 25; State v. Gray, 100 Mo. 523.)

*Thomas Gagan, District Attorney*, for respondent.

There was no error committed by the admission of the testimony of Thomas Lynch concerning the telephone conversation had with the defendant Dunn. (3 Chamberlayne's Mod. Law of Ev. 2303, § 1741c; Dowling v. Hastings, 211 N. Y. 199; K. C. Star Co. v. Standard Warehouse Co., 123 Mo. App. 13; People v. McKane, 143 N. Y. 455; People v. Micelli, 156 App. Div. 760; Tichnor Bros., Inc., v. Earley, 149 App. Div. 871; Chapman v. Commonwealth, 43 Ky. L. R. 965; Conkling v. Standard Oil Co., 116 N. W. Rep. 822; Barret v. Magner, 117 N. W. Rep. 245; Miller v. Leib, 109 Md. 414.) The admission of the letter in evidence was proper. (Lewis Pub. Co. v. Lenz, 86 App. Div. 451; Cunningham v. H. R. Bank, 21 Wend. 555; 1 Greenl. on Ev. [16th ed.] § 184; People v. Peckens, 153 N. Y. 576; People v. Micelli, 156 App. Div. 760.) There was no error committed by the learned trial court in its charge respecting the contract. (Dwight v. G. L. Ins. Co., 103 N. Y. 341; Brady v. Cassidy, 104 N. Y. 147; Saitch v. Kelly, 154 App. Div. 864; McNally v. Georgia-Florida Lumber Co., 146 App. Div. 456.) The court did not err in charging that the contractor and Dunn were presumed to know what work was to be done. (Stowell v. Greenwich Ins. Co., 163 N. Y. 298; Thomas v. Scutt, 127 N. Y. 133.) There was no error committed by the learned trial court in its charge to the jury as to what constituted criminal intent. (People v. Wiman, 148 N. Y. 29.) No error was committed by the court in allowing the jurors to separate. (Code Crim. Pro. § 421; People v. Buchanan, 145 N. Y. 1; People v. Hoch, 150 N. Y. 566; People

v. Montgomery, 13 Abb. Pr. [N. S.] 207; People v. Menken, 6 Abb. Pr. 225.)

CARDOZO, J.:

The Dunbar Contracting Company, its president and treasurer Bart Dunn, and Joseph J. Fogarty, a foreman of laborers in the service of the state, have been convicted of the crime of conspiracy. They are found to have conspired to defraud the state in the repair of a state road in Rockland and Orange counties. They did not do the work as the contract required it to be done; they did not supply material of the quantity or the quality which the contract made it necessary to supply; and by false estimates and reports and vouchers they covered up their wrongdoing and procured payment from the state. It is not denied that there is evidence from which a jury might find that there was a flagrant departure from the contract in the doing of the work. It is not even denied that there is evidence that his departure was with the guilty knowledge of the Dunbar Contracting Company and Fogarty. It is asserted, however, that there is no evidence of the guilty knowledge of Dunn. We think this criticism has no foundation. To rehearse at length the circumstances that connect Dunn with the conspiracy would serve no useful purpose. His relation to the contracting company supplied the motive. He was its president and treasurer, with general supervision of its affairs, and the subscriber for eighteen out of its twenty shares of stock. His relation to the work supplied the opportunity for knowledge. He signed the contract for his company, he visited the site at frequent intervals, and the barest inspection must have revealed the flagrant deviation from the contract. His own certificates supply the evidence that whatever an inspection was capable of revealing, he saw and understood. He signed receipts in the name of the corporation by himself as president in which he certified that " after personal investigation " he found the

account to be correct. He even undertook to certify that there had been extra work, for which extra payment was received. The fraud was one impossible, and, if possible, incredible, without concert of action between Fogarty and the representatives of the contractor. The circumstances already stated, as well as many others, point significantly to the defendant Dunn as the guiding and guilty agent.

Satisfied, as we are, that the evidence sustains the verdict, we pass to a consideration of rulings challenged as erroneous.

(1) The People were allowed to prove a talk over the telephone in which Dunn is said to have requested that Fogarty be assigned to work upon this job. They were also allowed to put in evidence a letter confirming the request. The defendants insist that there is no evidence that Dunn was either the speaker over the telephone or the author of the letter.

Dunn and Fogarty were old friends. Before going into the service of the state, Fogarty was employed by Dunn and by the Dunbar Contracting Company. When he applied to the civil service commission for employment as foreman, Dunn became his sponsor. A few days after the award of the contract, there came from some one a request that Fogarty be given the supervision of this work. The request was addressed to Lynch, the state superintendent of repairs in that district. It came over the telephone from New York city, where the Dunbar Contracting Company had its office, to Haverstraw, where Lynch lived. On the same day a letter was written on the letter-head of the Dunbar Contracting Company. It is in typewriting, is marked as " dictated," and is signed with the name Bart Dunn, but not in Dunn's handwriting. It contains this passage: " Also referring to my conversation had with you over phone this A. M. in reference to Mr. Joseph J. Fogarty, who was transferred from Walden to Westbury, Long Island, I would kindly ask you, if you can see your way clear to place Mr. Fogarty on my road. I am going out of town, and will

return the latter part of next week. In the meantime any courtesy you may extend to me by granting the above request, I beg to assure you will be appreciated by yours very truly, Bart Dunn."

At the time of this telephone message Lynch and Dunn had never met. They did meet, however, about five weeks later, and some three or four times thereafter. In the interval there had been other telephone talks that must have helped to pre-serve for Lynch the recollection of the voice which he had heard. As soon as they met, Lynch formed the opinion that the voice of Dunn and the voice that he had heard over the telephone were the same. With varying degrees of assurance he expressed that opinion upon the trial.

We think it was not error of law to receive this conversation in evidence. A voice heard over the telephone may be compared with the voice of a speaker whom one meeets for the first time thereafter as well as with the voice of a speaker whom one has known before. The difference affects the weight rather than the competency of the evidence (People v. Strollo, 191 N. Y. 42.) Whether the identity of the speaker had been sufficiently authenticated was a question of fact to be disposed of prelimi-narily by the trial judge, and unless there was a total absence of evidence, this court is without power to reverse his ruling. We are not at liberty to review the exercise of his discretion. It cannot be said that there was no evidence whatever to sustain the conclusion that the voice was that of the defendant Dunn. It is true that under skillful cross-examination the witness was led to state that his opinion was chiefly a guess, but it is plain that " opinion " and " guess " were to him synonymous. His final word on the subject was: " As near as I can judge, it was his voice." He did not profess certainty., but certainty was not necessary. All that his cross-examination means, when read in its entirety, is that as certainty was impossible, he could state his opinion only. His opinion was at least some evidence

(Hammond v. Varian, 54 N. Y. 398), especially when viewed in the light of the surrounding circumstances, the subject-matter of the message, the source from which it came, and the significant omission to produce any other employee to assume responsibility for its transmission. The question before the trial judge was whether he would exclude the conversation altogether, or receive it and allow the jury to say whether Dunn was the speaker. He chose the latter course, and we find no error in the ruling.

What has been said about the message over the telephone, answers at the same time the objection to the admission of the letter. If the telephone message came from Dunn, the internal evidence of the letter shows that it came from the same source. The letter refers to the conversation, repeats its substance, and confirms it. Unexplained and uncontradicted by any witness for the defendants, the evidence justified the inference that Dunn was the author (Cunningham v. Hudson River Bank, 21 Wend. 557; Lewis Pub. Co. v. Lenz, 86 App. Div. 451).

(2) The trial judge construed the written contract and instructed the jury that they must accept his construction. The defendants do not deny that he construed it correctly. They say, however, that a departure from the contract, due to honest mistake, was to be considered by the jury in passing upon the defendant's criminal intent. But this was plainly stated in the charge. The jury were told: " if the road was built in substantial compliance with the contract, or if there was an honest misunderstanding of the plans and specifications as a result of which work was not properly done, the defendants cannot be convicted." No fuller instructions on this subject were asked for, and none, we think, were necessary.

(3) The trial judge stated to the jury that the original proposal and specifications, signed in the name of the contractor by Dunn, the president and treasurer, and accepted by the state, constituted the contract; and that the contractor

was presumed, in the absence of any claim or evidence to the contrary, to have known what it signed. That is the substance of the instructions on this subject when read as a whole. The use of the word presumption may have been unfortunate, because of the obscurity which involves it (4 Wigmore Ev. § 2491; 2 Chamberlayne Ev. § 1026), but in view of the context, it was harmless. There is no doubt that the signing of a contract permits the inference that the signer had knowledge of its contents (3 Wigmore Ev. §§ 2129, 2134). This inference the trial judge characterized as a presumption, but he said at the same time that not only opposing evidence, but even an opposing claim, might be sufficient to repel it. The presumption was said to exist " in the absence of any claim or evidence to the contrary." This reduced it to its proper level as an inference of fact. In thus describing it we are dealing, of course, with a question of criminal and not of civil liability. The jury cannot have been misled by the statement of a presumption that was coupled with so many limitations. Even though the court had not given them any instructions on the subject, they would inevitably, in the absence of any claim of ignorance, have drawn for themselves the inference of knowledge. They were not left in doubt as to the consequences of honest error. They were informed that genuine misunderstanding of the requirements of the contract would call for an acquittal. There is no evidence that Dunn misunderstood anything. If, however, we assume that an inference of mistake was possible, the jury were told that they were at liberty to draw it. More than this could not, in reason, have been asked for. Even if technical error were to be found in the statement of the presumption, our duty would be to disregard it as not affecting the justice of the verdict (Code Crim. Pro. § 542).

(4) At the close of the trial the defendants' counsel asked the court to charge " that the mere fact that a conspiracy has for its object the doing of an act which may be unlawful, the

doing of such an act does not constitute the crime of conspiracy unless the jury find that the parties were actuated by a criminal intent." The court responded: " I charge that, gentlemen. The criminal intent in this case means an intent to get money unlawfully from the state for the corporation, the contractor." To this last statement the defendants' counsel excepted.

We think the charge is free from error. The trial judge did not instruct the jury, as in the Flack case (People v. Flack, 125 N. Y. 324), that if the acts which the defendants conspired to commit were unlawful, it made no difference whether they had conspired with unlawful or criminal intent. He charged that they must have intended, not merely to get the money, but to get it unlawfully, *i. e.*, the element of illegality was made by the charge a constituent of the intent. He had already charged that the aim of the conspiracy must be found to be " wicked, wilful and corrupt." He had charged " that a conspiracy would be corrupt if its aim was to cheat and defraud the state out of its money or property." He had also charged that if there was merely an honest mistake in respect of the work to be done, the defendants were not guilty. Reading the charge as a whole, we cannot doubt its correctness.

(5) Error is complained of in permitting the separation of the jury. Six jurors were taken to dine at one hotel, and six at another. Each squad was in charge of a sworn officer. What was done was in accordance with an order of the court. The defendants urge that the order was improper. There are times and emergencies when the statute contemplates that leave of the court will justify a separation of jurors (Code Crim. Pro. §§ 421, 465, subd. 3). During prolonged deliberations, some degree of separation is often inevitable. The trial court must determine to what extent it shall be allowed (Comm. v. Gagle, 147 Mass. 576; People v. Hoch, 150 N. Y. 566; Neal v. State, 64 Ga. 272; Wright v. State, 35 Ark. 639). We hold, therefore, that the division of the jurors did not infringe

the defendants' rights. But even if the separation were to be thought an irregularity, no prejudice resulted. The officers show without contradiction that the jurors, while separated, did not speak to any one else on any subject, and did not discuss the case among themselves. It is not every irregularity in the conduct of jurors that requires a new trial. The misconduct must be such as to prejudice a party in his substantial rights (Haight v. City of Elmira, 42 App. Div. 391, 395; People v. Buchanan, 145 N. Y. 1, 9 N. Y. Crim. 428; People v. Hoch, *supra;* State v. Baker, 63 N. C. 276; United States v. Davis, 103 Fed. Rep. 457, 467). The cases cited show that this is true of an irregular separation as of other misconduct. In the words of STORY, J., in Burrill v. Phillips (1 Gall. 360), the verdict will not be set aside if the jury's conduct " be free from unfavorable presumption." The courts below have full discretion to deal with such a question justly. The exercise of their discretion is not reviewable here (People v. Buchanan, *supra,* at p. 30).

The judgment of conviction should be affirmed.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE, COLLIN and MILLER, JJ., concur.

Judgment of conviction affirmed.