================================================================
This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 113
The People &c.,
            Respondent,
        v.
Curtis Basile,
            Appellant.

            Ben A. Schatz, for appellant.
            Nicoletta J. Caferri, for respondent.
            Civil Rights Research Center; National Association of
Criminal Defense Lawyers et al.; Animal Legal Defense Fund et
al., amici curiae.

MEMORANDUM:

            The order of the Appellate Term should be affirmed.

            Acting on an anonymous tip of potential mistreatment of

a dog, a special agent for the American Society for the

Prevention of Cruelty to Animals (ASPCA) responded to a

residential address in Queens County.  As the ASPCA agent later

- 1 -

testified at trial, he discovered a long-haired, mixed-breed German Shepard, confined to a garbage-strewn back yard by a four-foot lead tied to a fence.  The dog looked skinny; its bones were prominent.  The animal had fly bites on its ears and there were flies around its head; there was no food, water or nearby shelter.  Defendant Curtis Basile, the dog's owner, surrendered the animal's custody to the agent and was subsequently charged with violating Agriculture and Markets Law § 353.  As relevant to this case, section 353 provides that "[a] person who . . . deprives any animal of necessary sustenance, food or drink, or neglects or refuses to furnish it such sustenance or drink, . . . is guilty of a class A misdemeanor . . . ."  After a jury trial, defendant was convicted as charged, and Criminal Court sentenced him to three years of probation and 45 days of community service.  Upon defendant's appeal, the Appellate Term affirmed (40 Misc 3d 44 [App Term, 2d Dept, 11th & 13th Jud Dists 2013]).  We granted leave to appeal (22 NY3d 1137 [2014]), and now affirm as well.

Defendant contends that the trial court erred in refusing to instruct the jury that his conviction under section 353 required proof of a mens rea -- specifically, that he knowingly deprived the dog of or neglected or refused to furnish the basic necessities required to maintain the animal's health. We need not reach this question because, even assuming that defendant is correct, he would not be entitled to relief on this

record.[1]

At defendant's trial, the ASPCA agent recounted the dog's visibly compromised state of health and living conditions, as described above. Concomitantly, the veterinarian who conducted a physical examination of the dog testified that the animal "had a variety of problems," the most significant of which was "that he had an emaciated body condition where there's been extreme weight loss." In addition, the dog was "flea infested. He had open sores on his ears -- something called fly strike[s] from biting flies. He was dirty and he was battling dehydration." The animal weighed 42.2 pounds, whereas the average weight of a healthy dog of the same type was approximately 60-62 pounds. The veterinarian explained that a dog with such an emaciated body condition has visually prominent skeletal structures due to the loss of fat and muscle tissue. On the animal condition scale, with 5 being the worst, the dog's condition was 5 -- i.e., "one step away from death."

To reduce the animal to the condition that he observed, the veterinarian testified that it would have taken the dog many weeks of starving -- at least four to six -- as fat and muscle tissue were burned due to the lack of a proper diet. In sum, it was "clear" the dog was "underweight." An X-ray of the dog's

_____

[1]"A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists" (Penal Law § 15.05 [2]).

stomach showed that it contained scattered pieces of foreign matter -- possibly dirt, metal or plastic -- and chicken bones. There was no underlying disease as a cause of the animal's emaciated condition. The dog also had overgrown nails, which indicated that it had not been exercised. In the veterinarian's opinion, "[a] reasonable quality of life for a dog requires that [the animal] be provided with food, water and shelter, live in a reasonably clean environment and get at least a minimal amount of exercise. This dog was starved, lived in a filthy environment and got no exercise." Moreover, it is undisputed that defendant told the ASPCA agent that he could not afford to support the dog and he testified at trial that he had not been regularly feeding the animal.

In light of the trial testimony about the dog's wasted appearance and dirty living conditions as well as defendant's admissions, there can be no issue on this record whether defendant knowingly deprived the animal of or neglected or refused to furnish the basic necessities required to maintain the dog's health (see generally People v Koogan, 256 App Div 1078 [2d Dept 1939]). We have reviewed defendant's remaining arguments and consider them to be without merit.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, in a memorandum. Chief Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam, Stein and Fahey concur.

Decided July 1, 2015