The People of the State of New 
 York, Respondent,
against
Danny Neira, Appellant.



Appeal from a judgment of the District Court of Nassau County, First District (Sondra K. Pardes, J.), rendered December 18, 2012. The judgment convicted defendant, upon a jury verdict, of failing to provide proper sustenance to an animal.




ORDERED that the judgment of conviction is affirmed.
Defendant and his wife, Rose Neira, were charged, in separate informations, with, among other things, failing to provide proper sustenance to an animal (Agriculture and Markets Law § 353) (see People v Neira, ___ Misc 3d ___, 2016 NY Slip Op _____ [appeal No. 2013-87 N CR], decided herewith). The animal was a two-year-old male Great Dane dog, kept in a home located in Farmingdale, Nassau County. The court consolidated the informations charging defendant and his wife, and directed a consolidated trial. In addition, after the People disclosed that the body of the dog had inadvertently been destroyed, the court imposed a sanction of not permitting the report of the necropsy of the dog to be admitted in evidence, and no reference to the report could be made on the People's direct case. The court permitted the prosecutor to elicit evidence of uncharged crimes with respect to the living conditions of other animals in the home.
At the jury trial, the People presented testimony that, on November 22, 2010, based on an anonymous allegation of animal abuse, detectives from the Nassau County District Attorney's office conducted an investigation at a home located on Fallwood Parkway in Farmingdale, regarding the dog. They discovered that the dog was emaciated, had uncut claws, and that its ears were extremely dirty and unkempt. A leash or rope in the kitchen of the home to which the dog was tied was too short for the dog to reach a food bowl. The dog was brought to an animal hospital, where it was examined by a veterinarian. He determined that the dog weighed only 87.4 pounds. The dog should have weighed between 120 and 150 pounds. The dog's condition was consistent with malnutrition and a lack of medical care. The veterinarian testified that the dog's condition was so poor that he could not handle special nutrition-rich dog food. The dog's problems with his claws made it difficult for him to walk. The court did not permit the jury to learn that the dog had subsequently died.
The People adduced documentary evidence that defendant was an owner of the Farmingdale home, and that his driving record and automobile registration indicated that he lived in Farmingdale. The investigators, who visited the home on November 22, 2010, testified that defendant was present, although he did not speak to them. The evidence also established that, [*2]when Rose Neira was arrested on December 1, 2010, she called defendant to come home and take care of the children.
During defendant's case, the court permitted a witness to testify that she would take her son to visit defendant, whom she claimed was the boy's father, on weekends or alternate weekends at an apartment in the Bronx, that defendant stayed at that apartment, and that he did not live in Farmingdale in 2010. That witness also testified that defendant currently resided in the Farmingdale home, and that she lived in a separate apartment adjacent to the Farmingdale home.
Following the trial, the jury convicted defendant of failing to provide proper sustenance to an animal (Agriculture and Markets Law § 353).
On appeal, defendant argues that, as a result of the destruction of the dog's body after the necropsy had been performed, he could not conduct an independent necropsy and he was prevented from presenting a defense based on scientific evidence that the dog had suffered from a systemic disease. Thus, dismissal was the only appropriate remedy. Defendant also argues that the District Court erred in consolidating the informations and directing a consolidated trial, which violated Bruton v United States (391 US 123 [1968]). Defendant further argues that the District Court erred in permitting the prosecutor to elicit evidence of uncharged crimes with respect to the living conditions of other animals in the home. Next, defendant contends that the court improperly limited the testimony of a defense witness by sustaining objections to questions regarding whether defendant resided in an apartment in the Bronx in 2010. Finally, defendant contends that the verdict of guilt was against the weight of the evidence, as the People failed to establish that defendant had anything to do with the dog.
The People respond that the sanction of preclusion of the necropsy report was sufficient, and not an abuse of the court's discretion as the dismissal of a criminal charge is a drastic remedy that is rarely imposed. The People assert that the court correctly consolidated the informations and directed a consolidated trial. The People contend that the District Court correctly permitted evidence regarding the living conditions of other animals in the home. The People further contend that defendant's claim regarding the limitation of the testimony of a defense witness is unpreserved for appellate review. In any event, the testimony constituted hearsay, because it was based on whether defendant had told the witness that he lived in an apartment in the Bronx. The People conclude by asserting that, the evidence connected defendant with the home in Farmingdale and clearly established that the dog had not been fed.
CPL 200.40 (1), which applies to informations (see CPL 100.45), permits the joinder of criminal counts against two or more defendants, where (a) all of the defendants are jointly charged with every offense alleged in the information, or (b) all of the offenses charged are based on a common scheme or plan, or (c) all of the offenses charged are based upon the same criminal transaction as that term is defined in CPL 40.10 (2), or (d) under certain circumstances where the information includes a count of enterprise corruption (see People v Chestnut, 19 NY3d 606, 610 [2012]). CPL 200.40 (2) permits a court to order consolidation of informations and to direct a consolidated trial "if the offenses could have been charged in a single information pursuant to CPL 200.40 (1)." Where "the proof against two or more defendants is supplied by the same evidence, only the most cogent reasons warrant separate trials" (People v Thomas, 197 AD2d 719, 719 [1993]; see People v Mahboubian, 74 NY2d 174, 183 [1989]; People v Islam, 22 AD3d 599, 600 [2005]; People v Philip, 205 AD2d 714 [1994]). Here, the evidence against both defendants was the same, and the offense charged was based on the same criminal transaction.
Defendant's Bruton claim is without merit. Rose Neira had allegedly told a police lieutenant, who had observed the other animals in the home, that she and defendant had cared for those animals for years. However, it is undisputed that the People never sought to have that statement admitted into evidence, although they reserved the right to cross-examine defendant if he chose to testify. Thus, any claim that defendant and Rose Neira raised antagonistic defenses is without merit under the circumstances of the case. Furthermore, defendant does not argue that he did not testify because of the possibility of being cross-examined with respect to the statement. [*3]Cross-examination, by itself, is not a cogent reason for directing separate trials.
We find that defendant was prejudiced by the fact that the body of the dog was destroyed. However, the sanction imposed by the District Court, that the necropsy report would not be admitted into evidence, was adequate. Here, the court was required to impose a sanction, because the People violated their disclosure obligations as a result of the destruction of the dog's body (see People v Durant, 26 NY3d 341, 347 [2015]; People v Gomez-Kadawid, 66 AD3d 1124, 1125 [2009]). In doing so, "the court's attention [had to] focus primarily on the overriding need to eliminate prejudice to the defendant" (People v Martinez, 71 NY2d 937, 940 [1988]; see People v Kelly, 62 NY2d 516, 520 [1984]). "The appropriate sanction to be imposed is within the sound discretion of the trial court and is not to be disturbed unless it is determined that there has been an abuse of that discretion" (People v Jenkins, 98 NY2d 280, 284 [2002]). The court "may consider the degree of prosecutorial fault" (People v Martinez, 22 NY3d at 567; see People v Olson, 126 AD3d 1139, 1141 [2015]). Moreover, "the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of evidence" (People v Kelly, 62 NY2d at 521; see People v Haupt, 71 NY2d 929, 931 [1988]; People v Page, 105 AD3d 1380, 1380-1381 [2013]). We note that the jury never heard the cause of the dog's death; indeed, it never heard that the dog had died. The People did not ask the veterinarian any questions about the necropsy. Moreover, defendant's counsel argued during summation that the dog had a systemic disease (see People v Rowser, 139 AD3d 489 [2016]; People v Page, 105 AD3d at 1381).
The District Court did not err in permitting the People to elicit testimony regarding the living conditions of the other animals in the house. "Evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past" (People v Alvino, 71 NY2d 233, 241 [1987]), and "where its only purpose is to show bad character or propensity towards crime" (People v Arafet, 13 NY3d 460, 464-465 [2009]; see People v Morris, 21 NY3d 588, 594 [2013]). For such evidence to be admissible, the prosecutor must show that it constitutes proof of some material issue, such as motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the perpetrator (see People v Cass, 18 NY3d 553, 560 [2012]; People v Littlejohn, 112 AD3d 67, 74 [2013]; People v Agina, 103 AD3d 739, 742 [2013]). This list is "merely illustrative and not exhaustive" (People v Rojas, 97 NY2d 32, 37 [2001]). Whether such evidence is admissible for one of the permissible purposes is a question of law (see People v Wisdom, 120 AD3d 724, 725 [2014]; People v Littlejohn, 112 AD3d at 76). Once that determination is made, the court must engage in a "discretionary balancing of the probative value and the need for the evidence against the potential for delay, surprise and prejudice" (People v Alvino, 71 NY2d at 242; see People v Morris, 21 NY3d at 595; People v Cass, 18 NY3d at 560; People v Gillyard, 13 NY3d 351, 355-356 [2009]; People v James, 132 AD3d 905, 906 [2015]).
In the case at bar, the evidence regarding the living conditions of the other animals in the home was correctly admitted to establish the absence of mistake or accident (see People v Siplin, 66 AD3d 1416, 1417 [2009] [in a prosecution of aggravated cruelty to animals pursuant to Agriculture and Markets Law § 353-a (1), the court correctly permitted testimony regarding the defendant's improper care of another dog]). The fact that some of the evidence included charges that had been withdrawn by the People and dismissed is of no moment.
Defense counsel was afforded considerable latitude in eliciting testimony that attempted to establish that defendant lived in the Bronx in 2010. The court properly sustained objections to questions whether defendant actually lived in the Bronx apartment based upon considerations of hearsay (see People v Dean, 299 AD2d 892 [2002]; People v Ayuso, 254 AD2d 26 [1998]). Moreover, the testimony not permitted would have been "repetitive and collateral" (People v Bowen, 67 AD3d 1022, 1023 [2009]).
In exercising its factual review power (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348 [2007]), this court must weigh the relative probative force of conflicting testimony and [*4]the relative strength of conflicting inferences that may be drawn from the testimony. It must determine whether an acquittal would not have been unreasonable based upon the evidence presented, and whether the jury failed to accord the evidence the weight it should have been accorded (see People v Danielson, 9 NY3d at 348). In this case, even assuming that an acquittal would not have been unreasonable, the verdict of guilt was not against the weight of the evidence.
Agriculture and Markets Law § 353, entitled "Overdriving, torturing and injuring animals; failure to provide proper sustenance," provides, in pertinent part, that:
"A person who overdrives, overloads, tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether wild or tame, and whether belonging to himself or to another, or deprives any animal of necessary sustenance, food or drink, or neglects or refuses to furnish it such sustenance or drink, or causes, procures or permits any animal to be overdriven, overloaded, tortured, cruelly beaten, or unjustifiably injured, maimed, mutilated or killed, or to be deprived of necessary food or drink, or who wilfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal, or any act tending to produce such cruelty, is guilty of a class A misdemeanor and for purposes of paragraph (b) of subdivision one of section 160.10 of the criminal procedure law, shall be treated as a misdemeanor defined in the penal law."
The failure to feed an animal and/or the failure to seek medical care when clear, objective signs are present that the animal requires such medical care constitutes a violation of the statute (see People v Romano, 29 Misc 3d 9, 12 [App Term, 1st Dept 2010]; People v Richardson, 15 Misc 3d 138[A], 2007 NY Slip Op 50934[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2007]; People v Mahoney, 9 Misc 3d 101, 103 [App Term, 2d Dept, 9th & 10th Jud Dists 2005]; People v Curcio, 22 Misc 3d 907, 910-911 [Crim Ct, Kings County 2008]). The Court of Appeals has affirmed a defendant's conviction under section 353 of the Agriculture and Markets Law where a dog had been starved so severely that he was emaciated (see People v Basile, 25 NY3d 1111, 1112-1114 [2015]).
The People presented essentially undisputed evidence of the dog's emaciation and injuries. On appeal, defendant does not argue that the dog was not emaciated. Instead, defendant claims that the judgment should be reversed and the accusatory instrument dismissed because the People failed to establish that defendant lived at the home in Farmingdale in 2010. The defense presented as a witness the alleged mother of defendant's son, who testified that defendant lived in the Bronx in 2010, but that he currently lived in the Farmingdale home, and that she currently lived in a separate apartment adjacent to the Farmingdale home.
In contrast, the People adduced documentary evidence showing that defendant was an owner of the home and that his driving record and automobile registration indicated that he lived in Farmingdale. When the investigators initially visited the home on November 22, 2010, defendant was present, although he did not speak to the investigators. Moreover, when Rose Neira was arrested on December 1, 2010, she called defendant to come home and take care of the children. Thus, we find that the verdict of guilt was not against the weight of the evidence. 
Accordingly, the judgment of conviction is affirmed.
Iannacci, J.P., Tolbert and Garguilo, JJ., concur.
Decision Date: May 23, 2017