This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 58
The People &c.,
                Respondent,
          v.
Chris Price,
                Appellant.


                Tammy E. Linn, for appellant.
                Anastasia Spanakos, for respondent.


STEIN, J.:

        On this appeal, we are asked to determine whether the
People proffered a sufficient foundation at trial to authenticate
a photograph -- purportedly of defendant holding a firearm and
money -- that was obtained from an internet profile page
allegedly belonging to defendant.  We conclude that the People's

                          - 1 -

proof fell short of establishing the requisite authentication to render the photograph admissible in evidence.

                                I.

       Defendant was convicted by a jury of two counts of robbery (Penal Law §§ 160.15 [4]; 160.10 [1]).  At the trial, a witness testified that he was conducting milk deliveries with the victim when he noticed -- from his vantage point inside the delivery truck -- that someone was holding a gun about a foot away from the chest of the victim, who was standing outside the truck.  After exchanging words with the gunman, the victim threw a handful of cash from his pocket to the ground.  The gunman's accomplice gathered the money and the two robbers fled.  The witness never saw the gunman's face and was unable to identify defendant at trial as either of the perpetrators.

       Following this testimony, the People informed the court that they intended to introduce a photograph that was "found on the internet," which purportedly depicted defendant holding a handgun.[1]  According to the People, the victim would identify the gun in the photograph as the weapon used during the robbery, and a detective would identify defendant as the individual holding the gun in the picture.  Defendant objected to the admission of

_____

       [1]  The concurrence insists upon referring to the photograph as a "digitized rendition posted on a social media site."  Such characterization does not alter the fact that the People proffered the image as a photograph purporting to depict a real-life, accurate, and genuine representation of defendant holding a firearm.

the photograph in evidence, arguing that the People had not proffered a sufficient foundation establishing the authenticity of the photograph as a fair and accurate representation of defendant holding a gun and that the photograph had not been altered.  In response, the People contended that the necessary foundation would be established through proof that the photograph was obtained from a publicly available web page that bore an internet profile associated with defendant's surname and photographs of him.  Over defendant's renewed objection to the sufficiency of the proffered authentication, the court ruled that the photograph would be admissible in connection with the proposed testimony.

Thereafter, the victim testified to the circumstances of the robbery, and he identified defendant as the gunman.  The victim described the firearm used in the robbery as a 9-millimeter automatic with a silver rectangular feature on the top of the barrel, but he admitted that he had no prior familiarity with firearms.  When shown the portion of the photograph obtained from the website depicting the gun, the victim testified that the gun looked "similar" to the gun used in the robbery, but he could not identify the gun in the photograph as the one held by the robber.

A police detective subsequently testified that she found the photograph in question on the website "BlackPlanet.com."  The detective had searched defendant's

surname "Price" and, after scrolling through several pages of results containing approximately 50 internet profiles -- the usernames of which incorporated the term "Price" -- the detective saw a public profile that contained several photographs of defendant and had the user name "Price_OneofKind." There was no reference to defendant's full name on the profile page and, while the detective testified that the profile page listed the purported user's age and hometown, she did not testify as to whether any of this information matched defendant's pedigree information. Nor were any of the pages containing this pedigree information introduced to connect defendant to the specific user of this website.

The photograph at issue was posted to the internet profile page several months before the robbery. The detective testified that the individual in the photograph holding the handgun "look[ed] like" defendant. She explained that she had printed the photograph from the internet website, and she asserted that the printout was a true and accurate depiction of the photograph she observed on the website. However, the detective admitted that she did not know who took the photograph, when it was taken, where it was taken, or under what circumstances it was taken. Nor did she know whether the photograph had been altered or was a genuine depiction of that which it appeared to depict. Nevertheless, after the photograph was admitted into evidence over defendant's objection, the

detective identified defendant as the individual in the picture.

During summations, the People urged the jury to conclude that the photograph was taken from an internet profile page belonging to defendant, and they emphasized that the victim "recognized" the gun depicted in the photograph as the one held by the gunman.  Following deliberations, the jury found defendant guilty of both counts of robbery.

Upon defendant's appeal, the Appellate Division affirmed the judgment of conviction, holding that "the People laid a proper foundation for admission of the photograph, it was relevant to the issue of the defendant's identity as the gunman, and its probative value outweighed any prejudicial effect" (127 AD3d 995, 996 [2d Dept 2015]).  A Judge of this Court granted defendant leave to appeal (25 NY3d 1206 [2015]).

## II.

Defendant argues that the trial court erred by admitting into evidence the photograph obtained from the internet because the People failed to sufficiently authenticate it. Defendant contends that the People's authentication proffer was lacking because the victim could not identify the firearm in the image and because the People presented no evidence that the photograph was genuine and had not been altered.  The People argue in response that the photograph was sufficiently authenticated by the detective's testimony that the printout was a fair and accurate representation of the image shown on the

internet profile page, combined with the indicia suggesting that
the profile belonged to defendant.

"In order for a piece of evidence to be of probative
value, there must be proof that it is what its proponent says it
is. The requirement of authentication is thus a condition
precedent to admitting evidence" (United States v Sliker, 751 F2d
477, 497 [2d Cir 1984]; see 1-4 New York Evidentiary Foundations
§ A [2016]). "Accuracy or authenticity is established by proof
that the offered evidence is genuine and that there has been no
tampering with it" (People v McGee, 49 NY2d 48, 59 [1979]). We
have explained that "[t]he foundation necessary to establish
[authenticity] may differ according to the nature of the evidence
sought to be admitted" (id.). For example, mere identification
by one familiar with an item of evidence may suffice where the
item is distinct or unique (see People v Julian, 41 NY2d 340, 343
[1977]; see e.g. People v Flanigan, 174 NY 356, 368 [1903]).
Where a party seeks to admit tape recordings, authenticity may
often be established by testimony from a participant in the
conversation attesting to the fact that the recording is a fair
and accurate reproduction of the conversation (see People v Ely,
68 NY2d 520, 527 [1986]; People v Arena, 48 NY2d 944, 945
[1979]). In addition, testimony establishing a chain of custody
may suffice to demonstrate authenticity in other circumstances
(see e.g. Julian, 41 NY2d at 343; Amaro v City of New York, 40
NY2d 30, 35 [1976]; People v Connelly, 35 NY2d 171, 174 [1974];

see also People v Patterson, 93 NY2d 80, 84 [1999]; Ely, 68 NY2d
at 528).  Ultimately, "the availability of these recognized means
of authentication should ordinarily allow for and promote the
general, fair and proper use of new technologies, which can be
pertinent truth-yielding forms of evidence" (Patterson, 93 NY2d
at 84).

        With respect to photographs, we have long held that the
proper foundation should be established through testimony that
the photograph "accurately represent[s] the subject matter
depicted" (People v Byrnes, 33 NY2d 343, 347 [1974]; see
Patterson, 93 NY2d at 84; 1-4 New York Evidentiary Foundations §
I [2016]; Prince, Richardson on Evidence § 4-212 [2008]; Fisch on
New York Evidence § 142, at 82-83 [2d ed 1977]).  "Rarely is it
required that the identity and accuracy of a photograph be proved
by the photographer.  Rather, since the ultimate object of the
authentication requirement is to insure the accuracy of the
photograph sought to be admitted into evidence, any person having
the requisite knowledge of the facts may verify," or an expert
may testify that the photograph has not been altered (Byrnes, 33
NY2d at 347; see Patterson, 93 NY2d at 84).

        The People failed to authenticate the photograph
through any of these methods at trial, as the victim was unable
to identify the weapon as that which was used in the robbery,[2]

_____

        [2]  The concurrence appears to confuse authentication with
relevance.  To be sure, Appellate Division Departments have found
in-court testimony from witnesses who claim that they have

and no other witnesses testified that the photograph was a fair
and accurate representation of the scene depicted (see People v
Marra, 21 NY3d 979, 981 [2013], affg 96 AD3d 1623, 1625-1626 [4th
Dept 2012]; Byrnes, 33 NY2d at 347; Alberti v New York, Lake Erie
& W. R.R. Co., 118 NY 77, 88 [1889]; see also Zegarelli v Hughes,
3 NY3d 64, 69 [2004]) or that it was unaltered. Indeed, the
People do not claim, on appeal, to have satisfied the traditional
authentication requirements.

      Rather, the People argue that authentication of the
photograph by a witness with personal knowledge of the scene
depicted or through expert testimony is unnecessary in cases such
as this, where the photograph at issue is obtained from an

---

observed a defendant possessing a weapon similar to that which is
alleged to have been used in a crime to be relevant. In such
cases, however, there is no question as to the authenticity of a
witness's testimony (see e.g. People v Gonzalez, 88 AD3d 480, 480
[1st Dept 2011], lv denied 18 NY3d 924 [2012]; People v Rivera,
281 AD2d 702, 703 [3d Dept 2001], lv denied 96 NY2d 805 [2001];
People v Brown, 266 AD2d 863, 863 [4th Dept 1999], lv denied 94
NY2d 860 [1999]). Contrary to the concurrence's analysis, the
People here did not seek merely to "establish that the printout
was a digital image from defendant's website" (concurring op, at
5). Rather, the People sought to prove that defendant actually
possessed the firearm used in the robbery. In other words, the
photograph here was proffered only for the truth of its contents
and, therefore, was relevant only insofar as it is a fair and
accurate representation of that which it purports to depict.
While fabricated or altered photographs found on a defendant's
internet profile page may, in some other cases, be relevant
regardless of the photograph's authenticity -- for example, if
offered to show a defendant's state of mind, familiarity with
another person, or knowledge of something relevant to the case --
the People proffered no such purpose at trial for the photograph
at issue here.

internet profile page that the People claim is controlled by defendant.  To that end, the People point out that courts of several other jurisdictions have adopted a two-pronged analysis for authenticating evidence obtained from internet profiles or social media accounts.  This approach allows for admission of the proffered evidence upon proof that the printout of the web page is an accurate depiction thereof, and that the website is attributable to and controlled by a certain person, often the defendant (see e.g. State v Jones, 318 P3d 1020, *5-*6 [Kan Ct App 2014]; Smoot v State, 316 Ga App 102, 109-111, 729 SE2d 416, 425-426 [Ga Ct App 2012]; United States v Bansal, 663 F3d 634, 667 [3d Cir 2011]; Tienda v State, 358 SW3d 633, 642 [Tex Crim App 2012]).  The courts that have adopted this approach have generally held that circumstantial evidence, such as identifying information and pictures, may be used to authenticate a profile page or social media account as belonging to the defendant.  Relying on these out-of-state cases, the People contend that the detective's testimony identifying and describing the profile page she found on BlackPlanet.com, combined with her testimony that the printout was an accurate representation of the photograph displayed thereon, provided sufficient authentication evidence to allow admission of the photograph.  We disagree.

Assuming without deciding that a photograph may be authenticated through the method proposed by the People, the evidence presented here of defendant's connection to the website

or the particular profile was exceedingly sparse.[3]  For example,

notably absent was any evidence regarding whether defendant was

known to use an account on the website in question, whether he

had ever communicated with anyone through the account, or whether

the account could be traced to electronic devices owned by him.

Nor did the People proffer any evidence indicating whether the

---

[3]  We disagree with the assertion of our concurring colleagues that we should not decide this appeal without conclusively adopting a general and comprehensive test for authentication to be applied, not only in this case, but in all cases involving authentication of photographs found on a social network web page.  Because we conclude that the proffer was insufficient under any potential standard for authentication -- whether it be the traditional method of authenticating a photograph or the standard offered by the People (or some variation thereof) -- we need not go any further than deciding the case presently before us (cf. Matter of Solla v Berlin, 24 NY3d 1192, 1195 [2015] [even assuming, without deciding, adoption of petitioner's proposed definition, petitioner would not prevail on appeal], rearg denied 25 NY3d 1063 [2015]; People v Basile, 25 NY3d 1111, 1113 [2015] [holding that the Court need not reach the question presented by defendant on appeal "because, even assuming that defendant is correct, he would not be entitled to relief on this record"]).  "We reject the premise that we must now declare that one test would be appropriate for all situations, or that the proffered tests are the only options that should be considered" (Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1, 27 [2016]).  In our view, it is more prudent to proceed with caution in a new and unsettled area of law such as this.  We prefer to allow the law to develop with input from the courts below and with a better understanding of the numerous factual variations that will undoubtedly be presented to the trial courts.  Because we necessarily decide each case based on the facts presented therein, it would be premature to decide whether the People's proffer would have been sufficient had the prosecution, hypothetically, established that the website was controlled by defendant.  At this time, it is sufficient and appropriate for us to hold that, based on the proffer actually made, the photograph was not admissible.

account was password protected or accessible by others, whether non-account holders could post pictures to the account, or whether the website permitted defendant to remove pictures from his account if he objected to what was depicted therein. Without suggesting that all of the foregoing information would be required or sufficient in each case, or that different information might not be relevant in others, we are convinced that the authentication requirement cannot be satisfied solely by proof that defendant's surname and picture appears on the profile page. Thus, even if we were to accept that the photograph could be authenticated through proof that the website on which it was found was attributable to defendant, the People's proffered authentication evidence failed to actually demonstrate that defendant was aware of -- let alone exercised dominion or control over -- the profile page in question (see United States v Vayner, 769 F3d 125, 132-133 [2d Cir 2014]; Commonwealth v Williams, 456 Mass 857, 869 [2010]; compare Jones, 318 P3d at *6; Moore v State, 295 Ga 709, 713, 763 SE2d 670, 674 [2014]).

## III.

In sum, the People failed to demonstrate that the photograph was a fair and accurate representation of that which it purported to depict. Nor -- assuming adoption of the test urged by the People (or some variation thereof) -- did the People present sufficient evidence to establish that the website belonged to, and was controlled by, defendant. Thus, although

the decision of whether to admit or preclude evidence generally rests within the discretion of the trial court (see Patterson, 93 NY2d at 84), admission of the photograph here lacked a proper foundation and, as such, constituted error as a matter of law. Furthermore, on the facts of this case, we cannot conclude that the error was harmless (see generally People v Crimmins, 36 NY2d 230, 242 [1975]).

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

People v Chris Price

No. 58

RIVERA, J.(concurring):

I agree with the majority that the People failed to authenticate the computer printout and its admission was reversible error, entitling defendant to a new trial (majority op at 2). The case presents a novel question as to how a party may authenticate a printout of a digital image found on a social media website.[1] However, the majority does not adopt a test to apply in determining that the foundational proof was insufficient. I write to clarify why the People's authentication proof comes up short.

At defendant's trial on two counts of armed robbery (Penal Law §§ 160.15 [4]; 160.10 [1]), the People sought to admit a printout of a digital image obtained on a website called "BlackPlanet.com." The People argued that the printout depicted defendant holding the gun used in the robbery. There is no dispute that the printout depicts a person holding a gun and money. The court admitted the evidence, concluding that a proper

---

[1] To avoid confusion with our prior case law on the authentication of photographs, and to more precisely describe that the evidence offered for admission here was a digitized rendition posted on a social media site, I refer to the proffered evidence as a "printout of a digital image" rather than as a "photograph" (majority op at 1).

- 1 -

foundation had been laid after a detective identified defendant's face in the top half of the printout, and the victim identified the gun in the bottom half as a gun that "looks similar to the gun that took place in the robbery."  The Appellate Division affirmed the judgment, specifically rejecting defendant's argument that the People failed to adequately authenticate the printout (People v Price, 127 AD3d 995, 996 [2d Dept 2015]).

Before this Court, defendant renews his authentication challenge.  Defendant and the People propose different tests for authenticating social media evidence, each claiming their respective test best reflects the requirements of our prior case law and accounts for the risk of tampering associated with social media images.  Although I do not adopt defendant's proposed test, he is correct that the People's proof was inadequate in this case.

The decision whether to admit or exclude evidence "may be disturbed by this Court only when no legal foundation has been proffered or when an abuse of discretion as a matter of law is demonstrated" (People v Patterson, 93 NY2d 80, 84 [1999]).  "In determining whether a proper foundation has been laid for the introduction of real evidence, the accuracy of the object itself is the focus of inquiry" (People v McGee, 49 NY2d 48, 59 [1979]). "Accuracy or authenticity is established by proof that the offered evidence is genuine and that there has been no tampering with it" (id.).

We have long recognized that authentication is not subject to a one-size-fits all approach but, rather, the proof necessary to establish the reliability of the proposed evidence "may differ according to the nature of the evidence sought to be admitted" (id.).  Authentication may be established by direct or circumstantial evidence, and "reasonable inferential linkages can ordinarily supply foundational prerequisites" so long as the "tie-in effort" is not "too tenuous and amorphous" (Patterson, 93 NY2d at 85).  In other words, the party seeking to admit evidence may rely on a variety of proof, alone or in combination, to meet its burden of establishing the reliability of the evidence (see People v Ely, 68 NY2d 520, 527 [1986] ["The necessary foundation may be provided in a number of different ways."]).  While certain types of proof by their nature may establish authentication for categories of evidence, previously "noted methods of authentication are not exclusive" (Patterson, 93 NY2d at 84).  A court's determination as to the sufficiency of proof in any particular case is a fact-specific enterprise, which turns on the purpose of the evidence sought to be admitted (see e.g. People v Julian, 41 NY2d 340, 343 [1977] ["Proof of a complete chain of custody is one accepted technique for showing the authenticity of a fungible item of real evidence."]; People v Kinne, 71 NY2d 879, 880 [1988] [authentication certificate on a business record may "replace[] the testimony of a live witness"]; People v Lynes, 49 NY2d 286, 293 [1980] ["substance of the conversation" may supply

"criteria of reliability"]).  Thus, our precedent establishes that the test for authentication is flexible and responds to the factual nuances of each case.

As with other evidentiary matters, when presented with a question of authentication, the trial court's task is to determine whether the party offering the evidence has made a sufficient threshold showing of reliability so that the evidence may be submitted to the jury (see Lynes, 49 NY2d at 293 [a judge may leave it to the jury to decide whether the evidence implicates defendant or some other person]; People v Dunbar Const. Co., 215 NY 416, 422-423 [1915] [trial judge did not err in allowing the jury to determine whether defendant was the speaker in a telephone conversation submitted as evidence]).  It is for the jury then to determine the weight of the evidence and whether it implicates the defendant in the crime charged (Dunbar, 215 NY at 423 ["The question before the trial judge was whether he would exclude the conversation altogether, or receive it and allow the jury to say whether (defendant) was the speaker."]; Lynes, 49 NY2d at 293 ["(I)t cannot be said as a matter of law that the Trial Judge erred in leaving it to the jury -- aided as it could be by the instruments of cross-examination, counsels' arguments and other fact-finding tools available at the trial level -- to decide whether . . . the speaker was sufficiently identified."]).

Given the general population's mass consumption and use

of social media, "[p]redictably, social media postings are becoming an important source of evidence" (Imwinkelreid, Evidentiary Foundations, § 4.02 [6] [9th Ed. 2015]; see also Hon. Paul Grimm, Authentication of Social Media Evidence, 36 Am. J. Trial Advoc. 433 [2013]).  Courts have recognized that this evidence presents unique challenges (see e.g. Lorraine v Markel Am. Ins. Co., 241 FRD 534, 537 [D Md 2007]; Tienda v State, 358 SW3d 633, 639 [Tex Crim App 2012]; Parker v State, 85 A3d 682, 685-686 [Del Sup Ct 2014]).  As some commentators have noted, "social media is often stored on remote servers, is accessed through unique interfaces, can be dynamic and collaborative in nature, and is uniquely susceptible to alteration and fabrication" (Boehning & Toal, Authenticating Social Media Evidence, 248 NYLJ 65 [2012]).  Arguably, traditional approaches to authentication are inadequate because these new online platforms "can complicate the application of those traditional concepts, and we must be prepared to deal with these complications" (Schoen, Authentication of Social Media Postings, ABA Trial Evidence Committee [2011]).  On this appeal, we are squarely presented with the question of how our flexible authentication standard applies to social media images. Therefore, we have the opportunity to resolve an evidentiary issue of growing concern given the proliferation and

ubiquitousness of social media.[2]

Here, the People sought to establish that the printout was a digital image from defendant's web page. The majority concludes that the People failed to submit testimony that courts have previously found sufficient to authenticate a photograph: testimony from a forensic computer expert, the person who took the picture, or a third party who either was present at the time or who has personal knowledge about the accuracy of the image (majority op at 7). The majority does not decide whether the People may only rely on this type of proof, or whether other evidence would suffice. In response to the People's proposed test for the authentication of social media evidence, the majority states that, "[a]ssuming without deciding that a photograph may be authenticated through the method proposed by the People, the evidence presented here . . . was exceedingly sparse," and then concludes that, "the authentication requirement cannot be satisfied solely by proof that defendant's surname and picture appears on the profile page" (majority op at 9). This approach hints at, but does not confirm, the proof that would satisfy the People's burden. However, we cannot know whether the

_____

[2] Contrary to the majority's claim, when we decide an open question presented on appeal we do not act in haste (majority op at 10 n 3). Rather, we pronounce the law by which we reason an outcome. Given the pervasive use of social media, there is nothing premature about determining how law enforcement and prosecutors may use evidence obtained online (see Schoen, Authentication of Social Media Postings, ABA Trial Evidence Committee [2011]).

printout of the digital image was authenticated without knowing how to measure the adequacy of the People's proof (see Stop the Beach Renourishment, Inc. v Florida Dep't of Envtl. Prot., 560 US 702, 716 [2010] [rejecting the concurrence's insistence that "this case does not require those questions to be addressed" because "(o)ne cannot know whether a takings claim is invalid without knowing what standard it has failed to meet"]).[3]

Turning to the merits, whether the People's evidence was sufficient to authenticate the social media digital image depends on the purpose for which it was offered. The People argued that the printout was an accurate representation of an image from defendant's web page, and that it depicted him with the gun used in the crime. Essentially, the People sought to establish the reliability of the image by connecting defendant to a web page that belonged to him.

---

[3] In some contexts we may resolve a matter by "assuming without deciding" a legal fact or applicable standard (see e.g. East Ramapo Cent. Sch. Dist. v King, 29 NY3d 938, 939-940 [2017]; People v Fisher, 28 NY3d 717, 725 [2017]; People v Augustine, 21 NY3d 949, 951 [2013]; People v Cornelius, 20 NY3d 1089, 1091 [2013]; Quilloin v Walcott, 434 US 246, 256 [1978]; Smith v Spisak, 558 US 139, 156 [2010]). That approach is appropriate where the Court assumes a threshold fact necessary to the resolution of the issue on appeal or decides between two or more well-established rules (see Stop the Beach, 560 US at 718). It is one thing to hold that, for example, assuming there was error, it was harmless, but it is quite another to assume a test applies, and hold that it has not been satisfied. In the former case, what the Court assumes is, in actuality, immaterial to the outcome, but in the latter case -- as illustrated by defendant's appeal -- what the court assumes is precisely necessary to resolving the issue presented.

The People's proof had to first overcome two levels of authentication. Given the People's purpose for seeking admission of the image, I would hold that the People had to establish that: (1) the print out was an accurate representation of the web page; and (2) that the page was defendant's, meaning he had dominion and control over the page, allowing him to post on it. It is undisputed that the People proved, through the detective's testimony, that the printout was an accurate representation of the digital image she viewed on the BlackPlanet.com website. Crucially, however, the People failed to establish that this was defendant's web page, by direct or circumstantial evidence, or with proof establishing "reasonable inferential linkages [that] ordinarily supply foundational prerequisites" (Patterson, 93 NY2d at 85). Like in Patterson, the "tie-in effort" between the testimony relied on by the People here, and the purpose for which the printout was submitted, was "too tenuous and amorphous" (id.). In other words, the People did not submit proof by which a reasonable jury could conclude that the printout was an accurate representation of defendant's profile page. Although the majority does not expressly adopt this requirement, I agree with my colleagues' conclusion that "[t]he authentication requirement cannot be satisfied solely by proof that defendant's surname and picture appears on the profile page" (majority op at 8).

The People had knowledge of personal information posted

on the web page which might have established the necessary link
to defendant, but the People did not present that evidence as
part of the proffer.  Other evidence arguably addresses the
authentication of the web page and the depiction therein, such as
proof that the defendant posted or adopted the photograph, or
knew of the photograph and allowed it to remain on the profile
page without objection.  However, given the deficiency of the
proof actually submitted, I agree with the majority (majority op
at 10, n 3), we need not consider whether proof that the web page
belonged to defendant could also establish that the image
depicted was genuine (McGee, 49 NY2d at 59]).[4]  In other words,

_____

[4] Given the lack of adequate evidence connecting defendant
to the web page, the Court has no occasion to address the
sufficiency of the victim's identification of the gun.
Nevertheless, the majority concludes the People failed to
authenticate the printout, in part, because the victim "could not
identify the gun in the photograph as the one held by the robber"
(majority op at 3).  Yet, only in unusual circumstances will a
victim be able to testify with confidence that the proffered
evidence matches exactly the weapon used during the commission of
the crime.  More likely, a victim will be able to testify only
that the evidence looked "like" the weapon used, as the victim
did here.  Notably, the Appellate Division has decided that this
type of testimony is enough to permit admission (People v
Gonzalez, 88 AD3d 480, 480 [1st Dept 2011] [evidence of
defendant's possession of a knife that "resembled the knife used
in the robbery" one week after the robbery was "clearly
relevant"]; People v Rivera, 281 AD2d 702, 703 [3d Dept 2001]
["evidence of defendant's prior and subsequent possession of a
firearm resembling the one used in the present crimes was
admissible for the purpose of identifying defendant as the
perpetrator"]; People v Brown, 266 AD2d 863, 863 [4th Dept 1999]
[evidence that defendant possessed a handgun similar to the gun
used in the crime four days before "was admissible to establish
defendant's identity"]; People v Jackson, 237 AD2d 620, 620 [2d
Dept 1997] ["trial court properly admitted into evidence

since the People did not link defendant to the web page where the image was found, there is no need to consider on this appeal what must be shown to satisfy McGee's requirement that "there has been no tampering with" the proffered evidence (id.). That question is left for a future case.

This approach respects the role of the judge and jury. If the People satisfy their burden then the court may exercise its discretion to admit the evidence, assuming it otherwise meets the rules for admission (i.e., relevance, whether the probativeness of the evidence outweighs any potential unfair prejudice). Once the People have met these threshold requirements, that is, once a printout from a social media web page is authenticated, it is for the jurors to decide whether they find the evidence persuasive on an issue in the case (see

_____

testimony that five days after the crime, the defendant possessed a weapon resembling the weapon used in the crime" as proof of defendant's identity]). As this Court has stated, "certainty [is] not necessary" to establish admissibility (People v Dunbar, 215 NY 416, 423 [1915]). While the majority observes that in some of these, the courts held that the evidence was "relevant," and did not refer to "authentication" (majority op at 8 n 2), the testimony would only be relevant if the weapon were the same as the weapon used during the commission of the crime because in those cases the prior possession was admitted to show identity just as in defendant's case. These courts certainly must have determined a weapon to be the same as that used during the crime based on testimony that the weapon was "similar." In any event, whether the gun was properly identified by the victim in this appeal is rendered academic because the People did not connect defendant to the web page. Prudence requires we leave the issue until properly presented in another case.

Lynes, 49 NY2d at 293 [1980]; Dunbar Const. Co., 215 NY at 422-423; Evidence in New York State and Federal Courts § 9:7 [5A NY Prac Series] ["the judge alone determines the specimen's authenticity, subject to the jury's right to reject the judge's finding of genuineness"]; CJI2d [NY] Instructions of General Applicability--Role of Court and Jury).

As is the usual case, the defendant is free to challenge the reliability of the evidence, and suggest other inferences and interpretations of the People's proof. A defendant may submit evidence on rebuttal that the photo is unreliable, for example, with proof from the person who altered the photo, proof that the defendant disavowed the photo on the web page, or a copy of the original, unaltered photo. It is then for the jury to weigh the evidence and ultimately decide.

* * * * * * * * * * * * * * * * *

Order reversed and a new trial ordered. Opinion by Judge Stein. Chief Judge DiFiore and Judges Fahey and Wilson concur. Judge Rivera concurs in result in an opinion in which Judge Garcia concurs. Judge Feinman took no part.

Decided June 27, 2017